IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
NOV 27 2012
CLERK, US DISTRICT COURT
NORFOLK, VA

ASHLEY BOSMAN,

    Plaintiff,

v.                                  Civil Nos. 2:12cv140, 2:12cv141

UNITED STATES OF AMERICA,

    Defendant.

## OPINION AND ORDER

This matter comes before the Court on the defendant's motion to dismiss the plaintiff's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, claiming that this Court lacks subject matter jurisdiction over this action because her sole remedy is pursuant to the Virginia Workers Compensation Act (the "VWCA"). For the reasons set forth below, the defendant's motion is **GRANTED** and the action is **DISMISSED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In May 2009, plaintiff Ashley Bosman was employed by W R Systems, Ltd. ("WR Systems"), as a full-time program assistant. WR Systems is a company that provides engineering and other services to various government agencies, including the United States Navy. Bosman was employed under an engineering and technical services contract between WR Systems and the U.S. Navy Space and Naval Warfare Systems Center – Atlantic ("SPAWAR") at Naval Amphibious Base Little Creek, Virginia. Under this contract, WR Systems provided personnel to work for SPAWAR on issues related to navigation systems for Navy ships. The Navy contract also required WR Systems to maintain workers compensation coverage for its employees.

At the time, Bosman was assigned to perform administrative duties as part of a team supporting the Navy's submarine modernization program. Her usual workplace was the Submarine Modernization Laboratory located in Building 1558 on Naval Amphibious Base Little Creek. She and several other WR Systems employees worked there on a project related to the design, integration, and assembly of navigation equipment for Navy ships.

The Submarine Modernization Laboratory was located in a large open room containing several work benches where ten to twelve individuals worked on technical issues related to submarine navigation equipment. Leif Manley, a civilian Navy employee and an electrical engineer, was the technical manager for tasks performed by WR Systems personnel at the Submarine Modernization Laboratory. The rest of the workers there were WR Systems employees, including engineers, technicians, and administrative personnel like the plaintiff.

On May 22, 2009, Manley held a mid-day staff meeting to review the status of the various projects on which the Submarine Modernization Laboratory staff were working. Over the previous seven to eight years, such staff meetings had been held approximately once a month. They were generally held at the Submarine Modernization Laboratory or in another portion of the same building, but on at least three or four occasions over the previous two years, the meetings had been held at the Eagle Haven Golf Course driving range located on Naval Amphibious Base Little Creek. On those occasions, the lab staff in attendance would spend about twenty to thirty minutes hitting golf balls, and then meet to review the status of individual tasks, upcoming events, and overall project status.

The May 22, 2009, staff meeting was one of those directed by Manley and held at the driving range. Bosman was one of eight Submarine Modernization Laboratory staff members in attendance. Prior to this staff meeting, Bosman, who had only begun working at the Submarine

Modernization Laboratory on May 1, 2009, had never before played golf, hit golf balls, or swung a golf club. She had never before been to the Eagle Haven Golf Course or its driving range.

At the driving range, Bosman was given a bucket of golf balls, went to an individual slot at the driving range, and began hitting the golf balls with a golf club. Shortly thereafter, she was approached by Manley, who told her that she was bending too much at the knees and that he would demonstrate proper form to her. Manley directed her to stand behind and to the left of him while he demonstrated proper form to her. As part of his demonstration, Manley took a full swing and, during his follow-through, the club struck Bosman in the head, severely injuring her. Bosman was immediately transported to the hospital, where she underwent emergency surgery and remained hospitalized until May 30, 2009.

Bosman remained out of work until August 6, 2009, when she returned to work on a part-time basis. She resumed a full-time work schedule on September 1, 2009. Upon her return to work, Bosman requested and was transferred to another SPAWAR worksite at Naval Amphibious Base Little Creek staffed by WR Systems personnel. She has continued to receive medical treatment, including prescription medications, as a result of her injury.

On May 26, 2009, WR Systems submitted an employer's accident report to its workers compensation carrier, Great American Insurance Company ("Great American"), and Great American acknowledged receipt of the workers compensation claim that same day. Great American paid Bosman's wages until her return to work in August 2009, and it provided direct payment of Bosman's initial medical expenses. At some point, a workers compensation claim was filed with the Virginia Workers Compensation Commission (the "Commission") on Bosman's behalf, but she did not file the claim herself. On several occasions, beginning in July 2009 and continuing through January 2011, Bosman received correspondence from the

Commission requesting that she execute and return an enclosed workers compensation claim form, but she never executed or returned any of the forms, and she continued to receive income compensation and payment of medical expenses thereafter.

On May 16, 2011, Bosman submitted a Standard Form 95 ("SF 95") giving notice of her claim against the United States for damages due to personal injury. Bosman described the basis of her claim, first by referring to the following summary of the incident set forth in a letter attached to the SF 95:

> WR Systems provides support staff for the U.S. Navy's Little Creek Naval Amphibious Base in Virginia. During a company "team building" event at the base's driving range, Ashley Bosman was struck in the head with a golf club by Mr. Lief [sic] Manley of the Submarine Navigation Lab. Ms. Bosman was taken to the hospital and doctors opened her skull to relieve the pressure from internal bleeding. Ms. Bosman has been released from the hospital, but the extent of her injuries has yet to be determined.

Compl. Ex. A, at 10. On the face of the SF-95 itself, Bosman further described the basis of her claim:

> Ms. Bosman was a new hire of WR Systems and Leif Manley was the principal liaison of her employer with SPAWAR so she complied with his directives. He negligently directed her placement to observe what she was led to believe would be his slow motion demonstration of proper "form" in hitting a golf ball. Mr. Manley directed her to stand where she would be struck if instead of a slow motion demo, he proceeded at a full speed 90+ mph swing. The facilities themselves were negligently designed and maintained to allow this type of accident.

Compl. Ex. A, at 7. On September 15, 2011, an attorney from the Department of the Navy responded, denying liability on behalf of the United States on the ground that Manley had been acting outside the scope of his employment at the time of the injury.

On March 14, 2012, Bosman filed the complaint in this lawsuit.[1] In her complaint,

---

[1] The Court notes that Bosman's action has been consolidated with a second lawsuit initiated by Great American, acting as subrogee of WR Systems and for the benefit of Bosman, by a complaint filed on March 13, 2012. Great American's complaint was voluntarily dismissed

Bosman asserted a claim for damages under the Federal Tort Claims Act (the "FTCA"), as well as claims seeking related nonmonetary relief, including an order compelling administrative reconsideration of her claim by the Navy, an order tolling the statute of limitations in the event that administrative reconsideration is fruitless, and an order estopping the United States from contending that Manley was acting outside the scope of his employment.[2]

On September 28, 2012, the defendant filed a motion to dismiss the plaintiff's complaint, seeking dismissal of the plaintiff's claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. On October 12, 2012, the plaintiff filed a brief in opposition to the motion. On October 15, 2012, the defendant filed its reply brief. On October 19, 2012, with leave of court, the plaintiff filed a supplemental brief. A hearing was held on November 19, 2012. At the Court's invitation, each party submitted a one-page letter identifying supplemental authority on November 20, 2012.[3] The matter is now ripe for decision.

---

pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure by an agreed order signed by the parties and entered by the Court on November 5, 2012. In its motion papers, Great American advised that maintenance of its own lawsuit was unnecessary in light of the statutory workers compensation lien afforded to it by the VWCA. See generally Va. Code. §§ 65.2-309 to -311.

[2] Bosman's complaint also asserted a claim under the Freedom of Information Act ("FOIA"), seeking the production of certain documents regarding the scope of Manley's employment and an award of attorney's fees. In its motion, the defendant sought dismissal of Bosman's FOIA claim on the ground that she failed to file a proper claim, submitting an affidavit to establish that no properly submitted FOIA request was ever received by the appropriate agency authority. See generally Antonelli v. Fed. Bureau of Prisons, 591 F. Supp. 2d 15, 24, 26 (D.D.C. 2008). In her response to the motion to dismiss, Bosman has expressly withdrawn her FOIA claim.

[3] At hearing, the Court invited each party to submit a one-page letter identifying one case on the fellow servant doctrine for the Court's consideration. The Court expressly directed counsel to limit this submission to identifying one case without any argument whatsoever. Counsel for the plaintiff has submitted a selected case for the Court's consideration, but then proceeded to offer argument, which included discussion of two additional cases. The plaintiff's submission is in clear violation of the Court's instructions. However, the Court will consider the case as submitted, as well as the argument proffered.

## II. MOTION TO DISMISS STANDARD

The plaintiff bears the burden of establishing the existence of subject matter jurisdiction when challenged under Rule 12(b)(1). See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir.1991). In considering a challenge to its subject matter jurisdiction, a district court may look beyond the pleadings without converting the proceeding to a motion for summary judgment. Id. "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

## III. ANALYSIS

As Bosman is attempting to sue the United States, she must allege an unequivocal waiver of sovereign immunity. See United States v. Mitchell, 445 U.S. 535, 538 (1980). "There can be no consent by implication or by use of ambiguous language. . . . The consent necessary to waive [sovereign] immunity must be express, and it must be strictly construed." United States v. N.Y. Rayon Importing Co., 329 U.S. 654, 659 (1947); see also Huff v. U.S. Dep't of the Army, 508 F. Supp. 2d 459, 462 (D. Md. 2007).

### A. Damages Under the FTCA

"The FTCA provides a limited waiver of the federal government's sovereign immunity, placing the government on the same footing as a private person with regard to certain types of claims." Coulter v. United States, 256 F. Supp. 2d 484, 488 (E.D. Va. 2003). Under the FTCA, a plaintiff may sue for "money damages . . . for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or

omission occurred." 28 U.S.C. § 1346(b)(1). The parties agree that the alleged tortious conduct and resultant injury occurred here in Virginia, and thus the law of Virginia applies to this case. Accordingly, the threshold question presented in this case is whether, under Virginia law, the VWCA operates to bar the plaintiff's claims for tort damages against the United States.

Under the VWCA, if the United States qualifies as the plaintiff's statutory employer, and if the plaintiff's injury is the result of an accident arising out of and in the course of employment, then the plaintiff's remedies under the VWCA are exclusive and she is barred from pursuing her claims for tort damages against the United States. See Va. Code § 65.2-307 (providing that "[t]he rights and remedies herein granted to an employee when his employer and he have accepted the provisions of this title respectively to pay and accept compensation on account of injury or death by accident shall exclude all other rights and remedies of such employee"); see also Coulter, 256 F. Supp. 2d at 488; Hendricks v. Wal-Mart Stores, Inc., 142 F. Supp. 2d 752, 754 (W.D. Va. 2001).[4]

### 1. The United States as the Plaintiff's Statutory Employer

A threshold question is whether the United States was Bosman's employer within the statutory meaning of Virginia Code § 65.2-101 (defining "employer") and § 65.2-302 (defining "statutory employer"), so as to qualify for bar of tort recovery under the exclusive remedy provisions of § 65.2-307. See Pendley v. United States, 856 F.2d 699, 701 (4th Cir. 1988). The latter provision provides that:

---

[4] The parties have noted that, although Bosman never signed a claim form seeking workers compensation for her injury, she nevertheless accepted direct and indirect payment of workers compensation benefits from her employer's workers compensation carrier after having been requested by letter on several occasions to execute the claim form. But "the question of whether plaintiff, by accepting the insurance payments but not filing a claim with the Virginia Workers' Compensation Commission, has 'accepted' the VWCA is not material, as she is 'conclusively presumed' to have done so." Coulter, 256 F. Supp. 2d at 493.

> When any person (referred to in this section as "owner") undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.

Va. Code § 65.2-302 (defining "statutory employer").

Ordinarily, to determine whether an employee of a subcontractor was performing work that is part of the owner's "trade, business or occupation," a court would consider whether the work performed by the subcontractor "is, in that business, normally carried on through employees rather than independent contractors." Coulter, 256 F. Supp. 2d at 489 (quoting Shell Oil v. Leftwich, 187 S.E.2d 162, 167 (1972)) (emphasis in original); see also Pendley, 856 F.2d at 701. But "a modified test is applicable where the potential statutory employer is governed by statutes or regulations that define the scope of the entity's business." Coulter, 256 F. Supp. 2d at 489. In such cases, "the test is what the statutory employer . . . is required to do, what it is mandated to do by statute or regulation." Pendley, 856 F.2d at 702 (citing Henderson v. Cent. Tel. Co. of Virginia, 355 S.E.2d 596, 600 (Va. 1987)); see also Coulter, 256 F. Supp. 2d at 489.

It is undisputed that Bosman was employed as a program assistant at the Submarine Modernization Laboratory by WR Systems under an engineering and technical services contract between WR Systems and the United States Navy, pursuant to which WR Systems provided a team of engineering, technical, and administrative personnel to work on issues related to submarine navigation equipment. It is undisputed that the Navy contract expressly required WR Systems to carry workers compensation insurance for all its employees, and that its employees were on the base only for the purpose of performing the Navy contract. Thus the plaintiff would not have been where she was at the time of this incident except for her work for the United States

pursuant to a contract between her employer, WR Systems, and the United States Navy. It is also beyond question that the United States Navy has been charged with outfitting and repair of submarines and other military equipment to ensure operational readiness of naval forces necessary for the Nation's defense. See 10 U.S.C. §§ 5013(b), 5062(d); 32 C.F.R. §§ 700.202(a), .302, .405(c)(1). As Bosman stated in her notice of claim, "Leif Manley was the principal liaison of her employer with SPAWAR so she complied with his directives. He negligently directed her placement . . . where she would be struck . . . ." Compl. Ex. A, at 7.

Accordingly, under the circumstances presented in this case, the Court is compelled to conclude that the United States is the plaintiff's statutory employer under the VWCA. See Pendley, 856 F.2d at 700–02 (United States Air Force "operating under statutes and regulations as it does in the development of space weapons systems" was statutory employer of employee of independent contractor hired to provide engineering consulting and analysis services at Air Force research facility); Lawrence v. United States, 972 F.2d 340 (4th Cir. 1992) (unpublished per curiam table decision) (United States was statutory employer of employee of independent contractor hired to paint Navy ships); Muldrow v. United States, 972 F.2d 341 (4th Cir. 1991) (unpublished per curiam table decision) (United States was statutory employer of employee of independent contractor hired to perform grounds maintenance work on Navy base); Coulter, 256 F. Supp. 2d at 493 (United States Marine Corps, which was required by statute to provide enlistees with meals, was statutory employer of employee of subcontractor hired to provide cooking services at Marine Corps base); Perry v. United States, 882 F. Supp. 537, 540 (E.D. Va. 1995) (United States was statutory employer of employee of aircraft manufacturer performing remedial modifications to Navy aircraft); Hyman v. United States, 796 F. Supp. 905, 908 (E.D. Va. 1992) (United States was statutory employer of employee of subcontractor hired to install

insulation on Navy ship); see also Jones v. Commonwealth, 591 S.E.2d 72, 76 (Va. 2004) (state university was statutory employer of employee of independent contractor hired to perform asbestos abatement in university-owned building); Ford v. City of Richmond, 391 S.E.2d 270, 273 (Va. 1990) (municipality was statutory employer of employee of independent contractor hired to repair roof of city waterworks building); Henderson, 355 S.E.2d at 600 (public utility was statutory employer of employee of independent contractor hired to install and maintain telephone equipment).

### 2. Arising Out of and In the Course of Employment

In order for the VWCA to be the plaintiff's exclusive remedy, thus barring this tort suit against her statutory employer, the plaintiff's injury must also be an "injury by accident arising out of and in the course of the employment." Va. Code § 65.2-101 (defining "injury"). "The concepts of 'arising out of' and 'in the course of' employment are not synonymous and both conditions must be proved before compensation will be awarded." Liberty Mut. Ins. Corp. v. Herndon, 721 S.E.2d 32, 38 (Va. Ct. App. 2012) (internal quotation marks omitted). "The words 'arising out of' refer to the origin or cause of the injury, while the words 'in the course of' refer to the time, place, and circumstances under which the accident occurred." Hendricks, 142 F. Supp. 2d at 754.

"An accident occurs 'in the course of' the employment if it takes place within the period of employment, at a place where the employee may reasonably be expected to be, and while the employee is reasonably fulfilling the duties of the employment or is doing something reasonably incidental to it." Hendricks, 142 F. Supp. 2d at 755. While Bosman was not injured at her usual workplace, she was present at the Eagle Haven Golf Course driving range to attend a mid-day staff meeting, or "team building" event as Bosman herself has characterized it. Manley and the

Submarine Modernization Laboratory staff had previously met there on at least three or four prior occasions to drive golf balls and meet to discuss project status. And the Court is of the opinion that the golf activity in which she was engaged at the time of her injury was reasonably incidental to her employment insofar as it was intended to serve, as she has stated, as a "team building" exercise and it was coupled with her participation in an otherwise routine, monthly staff meeting. Based on the undisputed facts of record, the Court concludes that Bosman's accidental injury arose in the course of her employment. See id.; see also Harbin v. Jamestown Vill. Joint Venture, 428 S.E.2d 754, 757 (Va. Ct. App. 1993) (employee who "was required to attend an off-premises meeting at the discretion of his employer" was "deemed to be in the course of employment because the employee is engaged in the direct performance of duties assigned by the employer").

"An accident arises out of the employment when there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed." United Parcel Serv. of Am. v. Fetterman, 336 S.E.2d 892, 893 (Va. 1985). "Virginia courts apply an 'actual risk test,' meaning that the employment must expose the employee to the particular danger causing the injury, notwithstanding the public's exposure generally to similar risks." Hendricks, 142 F. Supp. 2d at 755. Under the actual risk test,

> if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But [the applicable test] excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have

flowed from that source as a rational consequence.

Simms v. Ruby Tuesday, Inc., 704 S.E.2d 359, 363 (Va. 2011) (alterations in original).

The plaintiff contends that her injury does not arise out of her employment because she was involved in a recreational activity unrelated to her usual work duties. But the fact that being struck by a golf club is a danger commonly confronted by members of the public who enter onto a golf course or driving range is not dispositive of a causal relationship between Bosman's injury and the conditions of her employment. "[W]hether the causative danger encountered by the claimant is something the public would commonly confront is not conclusive in determining whether the danger is an actual risk of employment." Liberty Mut. Ins. Corp. v. Herndon, 721 S.E.2d 32, 38 (Va. Ct. App. 2012). "'[I]t matters not that the [risk] is common to the neighborhood' in this sense, as long as the injury can 'fairly be traced to the employment as a contributing proximate cause.'" Id. at 39 (quoting another source) (alterations in original). A workplace condition that presents an increased or enhanced risk of accident implicates an actual risk of employment. See Bernard v. Carlson Cos.-TGIF, 728 S.E.2d 508, 511–12 & n.3 (Va. Ct. App. 2012).

Bosman was at Naval Amphibious Base Little Creek only because of her employment, at which time she was receiving pay. She was at the driving range, located on Naval Amphibious Base Little Creek, in the middle of her workday with several of her co-workers for the purpose of participating in a staff meeting or "team building" event, as she herself has characterized it—one of a series of similar staff meetings that had been held at the same driving range on several different occasions. She was not a golfer—indeed, she had never before played golf, hit golf balls, or swung a golf club. At the time of her injury, she was taking directions from Manley, technical manager of the Submarine Modernization Laboratory and, as she describes him, "principal liaison" between SPAWAR and WR Systems, who specifically directed her to stand in

the spot where she stood and was struck by a golf club as Manley demonstrated the proper form for hitting a golf ball. This was not a hazard to which Bosman would have been equally exposed apart from her employment. Although she may not have routinely faced an increased risk of being struck by a golf club or other implement in her usual workday activities in the Submarine Modernization Laboratory itself, by holding a staff meeting or "team building" event at a golf course driving range, in which the agenda included a session of driving golf balls before a group discussion of project status, Bosman's employment exposed her to an increased risk of this sort of injury. Based on the undisputed facts of record, the Court concludes that Bosman's accidental injury arose out of the conditions of her employment.

Accordingly, having concluded that the United States is the plaintiff's statutory employer under the VWCA, and that her accidental injury arose out of and in the course of her employment, the plaintiff's remedies under the VWCA are exclusive and she is barred from pursuing her claims for tort damages against the United States.[5]

### B. Administrative Reconsideration and Other Equitable Relief

As an alternative to her claim for money damages under the FTCA, the plaintiff has requested certain equitable relief. Relying on 28 C.F.R. § 14.6(a)(1), which exhorts federal agencies to resolve FTCA claims at the administrative stage "[w]henever feasible ... through informal discussions, negotiations, and settlements" rather than formal litigation, the plaintiff requests an order compelling administrative reconsideration of her claim by the Navy, as well as an order tolling the statute of limitations in the event that administrative reconsideration is fruitless. She also seeks an order estopping the United States from contending that Manley was

---

[5] The Court notes that, even if it had not been barred by the exclusivity provisions of VWCA, the plaintiff's action would appear to have been barred by the fellow servant doctrine under Virginia common law. See generally Norfolk & W. Ry. Co. v. Hall, 49 F.2d 692, 697 (4th Cir. 1931).

acting outside the scope of his employment.

The FTCA contains a general waiver of sovereign immunity with respect to "money damages . . . for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); see also id. § 2674; Talbert v. United States, 932 F.2d 1064, 1065 (4th Cir. 1991). "The only relief provided for in the [FTCA] is 'money damages.'" Talbert, 932 F.23d at 1065–66. To the extent the plaintiff seeks nonmonetary relief, this Court lacks jurisdiction under the FTCA to grant it. Id. at 1066.

In support of her claim seeking an order directing administrative reconsideration, Bosman cites one of the regulations establishing administrative procedures for addressing claims under the FTCA, 28 C.F.R. § 14.6. But "administrative regulations cannot waive the federal government's sovereign immunity." Mitzelfelt v. Dep't of Air Force, 903 F.3d 1293, 1296 (10th Cir. 1990) (citing Mitchell, 463 U.S. at 215–16). Moreover, the regulation itself is hortatory only and not intended to create a private cause of action or a mechanism for judicial review of the administrative process for FTCA claims. In the paragraph preceding that cited by the plaintiff, the regulation clearly states that "[t]his section provides guidance to agencies only and does not create or establish any right to enforce any provision of this part on behalf of any claimant against the United States, its agencies, its officers, or any other person. This section also does not require any agency to use any dispute resolution technique or process." 28 C.F.R. § 14.6(a).

In the absence of an express and unequivocal waiver of sovereign immunity with respect to the plaintiff's nonmonetary claims, the Court lacks subject matter jurisdiction to grant the requested injunctive relief.

## IV. CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss the plaintiff's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is **GRANTED** and the action is **DISMISSED** for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
Senior United States District Judge

November 26, 2012
Norfolk, Virginia